UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONTEZ MCQUITER,

    Plaintiff,

v.

Case No. 2:07-cv-100
HON. GORDON J. QUIST

DAVE BURNETT, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Dontez McQuiter, an inmate currently confined at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Special Activities Coordinator Dave Burnett and Chaplain Gerald Riley. Plaintiff's complaint alleges that Defendants have improperly deprived him of a Kosher diet in violation of his right to freely practice his religious beliefs.

Plaintiff states that on September 20, 2006, Defendant Riley interviewed him for the Kosher meal program. On October 3, 2006, Plaintiff received a memorandum from Defendant Riley informing him that he had been denied participation in the Kosher meal program. Plaintiff filed a grievance and appealed the denial of his grievance to step III. On February 20, 2007, he filed request for a declaratory ruling, to no avail. Plaintiff claims that Defendants' actions violated his rights under the First Amendment to the United States Constitution, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that he is entitled to relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. § 2000cc-1, which states:

(a) General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

The RLUIPA applies a strict-scrutiny standard whenever a substantial burden is imposed on religious exercise by a state government and occurs in a program or activity that receives Federal financial assistance, or affects, or removal of that substantial burden would affect, interstate or foreign commerce. *Cutter v. Wilkinson*, 423 F.3d 579, 582 (6th Cir. 2005).

In their motion for summary judgment, Defendants state that they are entitled to summary judgment on Plaintiff's claims for money damages because the RLUIPA does not specifically allow for damages against prison officials in their individual capacities. In support of this contention, Defendants state that the RLUIPA is applicable only to programs or activities that receive federal assistance and state that the individual Defendants did not receive such funds. Defendants also state that the RLUIPA is spending clause legislation, and because the individual defendants were not parties to the grant agreement, holding them liable for individual damages under the Act would be contrary to principles of contract law. As noted by the United States District Court in the Northern Division of Georgia, this issue continues to be unresolved:

> [A] growing number of federal courts have expressed equivocation, if not doubt, as to whether the RLUIPA permits suits for damages against government officials in their individual capacities. *See Gooden v. Crain,* -F. Supp.2d-, 2005 WL 3436769, at *9 (E.D. Tex. Dec.13, 2005) (appearing to hold claims for damages, especially those against officials in individual capacities, unavailable under the RLUIPA); *Smith v. Haley,* 401 F. Supp. 2d 1240, 1246 (M.D. Ala. 2005) ("Because there is simply nothing in the statute that clearly suggests that government employees can be liable for damages in their individual capacities, the court doubts that RLUIP[A] provides for such."); *Boles v. Neet,* 402 F.Supp.2d 1237, 1240 (D. Colo. 2005) ("The Court understands [the RLUIPA] to permit cases against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity."); *Chase v. City of Portsmouth,* No. Civ. A. 2:05CF446, 2005 WL 3079065, at *5 (E.D. Va. Nov.16, 2005) ("Appropriate relief may include injunctive and declaratory relief as well as nominal damages."); *Farrow v. Stanley,* No. Civ. 02-567-PB, 2005 WL 2671541, at *11 n. 13 (D.N.H. Oct.20, 2005) ("There is substantial uncertainty ⋯ as to whether [42 U.S.C. § 2000cc-2] even provides a right to money damages."); *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter,* 326 F.Supp.2d 1140, 1162 (E.D.Cal.2003) ("the issue of whether RLUIPA allows the recovery of damages is an open question"); *Agrawal v. Briley,* No. 02C6807, 2003 WL 164225, at *2 n. 2 (N.D.Ill. Jan.22, 2003) ("it is unclear whether [42 U.S.C. § 2000cc-2(a)] authorizes a claim for damages as well as injunctive relief"). *But see Williams v. Bitner,* 359 F. Supp. 2d 370 (M.D.Pa.2005) (recognizing corrections employees and officials' exposure to liability in individual capacities on inmate's § 1983 claim asserting violation of the RLUIPA).

*Daker v. Ferrero, et al.*, 2006 WL 346440, slip op. p. 9 (N.D. Ga. Feb. 13, 2006).

The cases reviewed by the *Daker* court rely, in part, on the language of the RLUIPA, which provides for appropriate relief against a "government." *Id.*; 42 U.S.C. § 2000cc-2(a). In addition, 42 U.S.C. § 2000cc-1(a) states that no "government" shall impose a substantial burden on the religious exercise of a prisoner. *Id.* (emphasis added). However, for purposes of the RLUIPA, the term government includes:

> (i) a State, county, municipality, or other governmental entity created under the authority of a State;

>> (ii) any branch, department, agency, instrumentality, or **official** of an entity listed in clause (i); **and**
>
>> (iii) **any other person acting under color of State law**.

*Daker*, 2006 WL 346440 at *9 (emphasis in original) (*citing* 42 U.S.C. 2000cc-5(4)). As noted by the *Daker* court, if the statute's definition of "government" was limited to (i) and (ii), "its remedial reach would no doubt be susceptible to a construction that embraces only those claims asserted against officials in their official capacities." *Id.* Consequently, the addition of section (iii), whose language tracks closely that found in 42 U.S.C. § 1983, appears to provide for actions against state officials in their individual capacities. *Daker*, 2006 WL 346440 at * 9.

The *Daker* court further notes because the RLUIPA provides for "appropriate relief," some courts have questioned whether Congress intended to permit only injunctive relief. However, the *Daker* court observed that while § 2000cc-2(a) does not explicitly permit individual capacity suits for money damages, it does not explicitly preclude them either. *Id.* In *Daker*, the court concluded that the RLUIPA's provision for appropriate relief should be read as an incorporation by Congress of the vast body of law respecting the "manifold limitations on government and government actor's exposure to suit - including, e.g., the Eleventh Amendment, qualified immunity, and the Prison Litigation Reform Act." *Id.*

The undersigned notes that the Sixth Circuit has not addressed the liability of individual defendants under the RLUIPA. However, the Sixth Circuit has allowed a lawsuit filed under the RLUIPA against individual defendants to proceed without considering whether individuals are amenable to lawsuit. *Cutter v. Wilkinson*, 423 F.3d 579 (6th Cir. 2005). Because the undersigned is persuaded by the reasoning set forth in *Daker*, I recommend that Defendants be denied summary judgment on the issue of individual liability.

Defendants further contend that Plaintiff's official capacity claims are barred by the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).

The undersigned notes that 42 U.S.C. § 2000cc-2(a) provides for a private cause of action under the RLUIPA:

> (a) Cause of action
>
> A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.

As noted previously, this cause of action arises whenever a substantial burden is imposed on religious exercise by a state government and occurs in a program or activity that receives Federal financial assistance, or affects, or removal of that substantial burden would affect, interstate or foreign commerce. 42 U.S.C. § 2000cc-1(b)(1-2); *Cutter*, 423 F.3d 579, 582 (6th Cir. 2005).

As noted by the district court for Southern District of Ohio, Eastern Division, a state is not immune under the Eleventh Amendment from suit by a prisoner alleging violation of the RLUIPA, if the state has accepted federal funds for prison activities or programs on condition that it comply with the RLUIPA. *Gerhardt v. Lazaroff*, 221 F. Supp.2d 827, 851 (S.D. Ohio, 2002), *aff'd Cutter v. Wilkinson*, 423 F.3d 579 (6th Cir. 2005). Such acceptance "necessarily establishes [the state's] acquiescence to § 2(a) of the Act, providing that '[a] person may assert a violation of this

chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government,' where the term 'government' includes a state, its departments, or its officials." *Id.* at 851-52 (*citing* 42 U.S.C. § 2000cc-5(4)(A)).

Defendants rely on a December 29, 2006, decision from the Fourth Circuit in support of their contention. *See Madison v. Commonwealth of Virginia*, 474 F.3d 118 (4th Cir. 2006). In *Madison*, the court found that the Eleventh Amendment waiver did not extend to suits for monetary damages. The court in *Madison* found that the RLUIPA's "appropriate relief against a government" language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages, noting that "appropriate relief" is "susceptible to more than one interpretation." *Id.* at 131. The court cited *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006), which held that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq, had an identical "appropriate relief" provision which was insufficient to waive federal sovereign immunity for damages suits. *Madison*, 474 F.3d at 132. In *Madison*, the court found that "had Congress wished to effect a State's waiver of Eleventh Amendment sovereign immunity from suit for damages as a consequence of accepting federal funds, it could easily have expressed that intention" and that the failure to contain such phrasing forecloses any argument that the statute waives immunity for monetary damages. *Id.*

The court in *Madison* further stated that the catch-all provision waiving immunity with regard to "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance" in the Civil Rights Remedies Equalization Act of 1986, 42 U.S.C. § 2000d-7 (CRREA)

does not clearly and unambiguously apply to the RLUIPA. *Id.* The court further noted that the CRREA makes no mention of the RLUIPA. *Id.*[1]

In addressing this issue, the undersigned notes that this question was recently addressed by this court *Cardinal v. Metrish*, 2008 WL 696479 (W.D. Mich. Mar. 13, 2008). In *Cardinal*, the court stated:

> Courts are split on whether a plaintiff may sue an individual in his or her official capacity for monetary damages under the RLUIPA. *Compare Smith,* 502 F.3d 1255 (holding that the RLUIPA contains a waiver of sovereign immunity for monetary damages claims), *and Price v. Caruso,* 451 F.Supp.2d 889 (E.D.Mich.2006) (same), *with Madison,* 474 F.3d 118 (holding that the RLUIPA contains a waiver of sovereign immunity but that the waiver does not extend to monetary damages).
>
> Suits against state officials in their official capacity are treated as suits against the State. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). As such, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.,* 112 S.Ct. at 362. Metrish argues that Plaintiff's claim for monetary relief against her in her official capacity is barred by the Eleventh Amendment. Plaintiff, relying on *Price,* 451 F.Supp.2d at 902, responds that the State waived its sovereign immunity by accepting federal funds conditioned on waiver. Plaintiff is correct that "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). However, courts "will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' " *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

---

[1] The undersigned notes that this fact is unsurprising given that the RLUIPA was passed in 2000, *Cutter v. Wilkinson*, 423 F.3d 579, 582 (6th Cir. 2005), long after passage of the CRREA.

The statute specifically provides that a person may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The statute defines government to include states, state agencies, and any other person acting under color of state law. 42 U.S.C. § 2000cc-5(4). Therefore, the RLUIPA creates a cause of action against the State, and "[b]y voluntarily accepting federal correctional funds, it consented to federal jurisdiction for at least some form of relief." *Madison,* 474 F.3d at 130. Thus, the Court agrees with both the Fourth and Eleventh Circuits that states have waived their sovereign immunity, in some form, for causes of action under the RLUIPA.

However, the difficult and divisive question is whether that waiver extends to monetary damages. This is because "[a] waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages." *Webman v. Fed. Bureau of Prisons,* 441 F.3d 1022, 1025 (D.C.Cir.2006). The Supreme Court has articulated several principles for a court to consider when determining whether a waiver of sovereign immunity extends to monetary damages. First, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996). Second, "the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* at 193, 116 S.Ct. at 2097. Third, legislative history is immaterial because "the 'unequivocal expression' of elimination of sovereign immunity that [the Court] insist[s] upon is an expression in the statutory text." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 37, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992). Thus, if a waiver of sovereign immunity is susceptible to multiple interpretations-one which includes monetary damages and one which does not-the waiver does not extend to monetary damages. *See Id.,* 112 S.Ct. at 1016.

The statute provides that a person may bring a cause of action against the government and obtain "appropriate relief." 42 U.S.C. § 2000cc-2(a). The term "appropriate relief" is susceptible to various interpretations. It is possible to interpret "appropriate relief" to cover all types of relief-both equitable and monetary. "However, another plausible reading is that 'appropriate relief' covers equitable relief but not damages, given Congress's awareness of the importance of sovereign immunity and its silence in the statute on the subject of damages." *Webman,* 441 F.3d at 1026 (construing same phrase contained in the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et al.*). Because this provision is amenable to

- 9 -

> multiple interpretations which may or may not include monetary relief, the phrase "appropriate relief" is not the type of unequivocal waiver of immunity from monetary damages required. *Madison,* 474 F.3d at 132.
>
> Moreover, the Court is not convinced by the Eleventh Circuit's argument in *Smith.* The *Smith* panel relied on the Supreme Court's opinion in *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin,* the Supreme Court construed what remedies were available for violations of Title IX. The Court reiterated, and relied on, the traditional presumption that courts "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S.Ct. at 1032. This presumption was in favor of both injunctive and monetary relief. *Smith,* 502 F.3d at 1270. Thus, according to the *Smith* court, because Congress did not specifically exclude monetary damages for violations of the RLUIPA, the term appropriate relief must include them. *Id.* This analysis, however, fails to account for one crucial difference: context. The Supreme Court in *Franklin* was engaging in pure statutory interpretation separate and distinct from any considerations of sovereign immunity. Thus, the Court was neither bound by nor influenced by the principle that waivers of sovereign immunity must be strictly construed in favor of immunity and that waivers must be unequivocal. A generally applicable presumption of statutory interpretation loses its relevance when confronted with contrary principles of law specific to the issue at hand. In the context of waivers of sovereign immunity, those principles are clear: the waiver must unequivocally extend to monetary damages.
>
> Because the RLUIPA does not contain an unambiguous waiver of sovereign immunity for monetary damages, Plaintiff may not state a claim for monetary damages against Metrish for violations of the RLUIPA. Additionally, Plaintiff's claims for equitable relief are moot because Plaintiff has been transferred from the prison where the incident occurred. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996). Thus, the Court will grant summary judgment in Metrish's favor on Plaintiff's RLUIPA claims.

*Cardinal v. Metrish*, 2008 WL 696479, **2-4. Based on the court's analysis in *Cardinal v. Metrish*, the undersigned recommends that the court grant Defendants summary judgment on their claim that they are entitled to Eleventh Amendment immunity for damages.

Defendants further claim that they are entitled to summary judgment in this case because the denial of Kosher meals to Plaintiff was the least restrictive means of furthering a compelling governmental interest. Defendants contend that the denial of a Kosher diet to prisoners who are not sincere in their religious beliefs furthers the MDOC's interest in maintaining security because prisoners who are sincere in their beliefs can be offended by those who are not sincere. In addition, Kosher meals cost at least twice as much as regular meals, so that denying such meals to non-sincere prisoners furthers the compelling governmental interest of controlling costs.

As noted above, Plaintiff claims that Defendants' conduct violated his constitutional right to freedom of religion and his rights under the RLUIPA, 42 U.S.C. § 2000cc-1. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

The standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning

institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added). A claimant need not be a member of a particular organized religious denomination to show sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test – whether the plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a Kosher diet. *Id.* at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id.* at 1523.[2] As noted by the Tenth Circuit in *Mosier*[3], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

Defendants have the right to ensure that each prisoner is sincere in his belief before allowing him access to the Kosher Meal Program. The use of MDOC Operating Procedure 05.03.150 was a legitimate means of determining whether a prisoner is entitled to the Kosher menu. The MDOC Operating Procedure 05.03.150-A provides:

> K. A prisoner who wants to participate in the Kosher Meal Program must submit a written request to the Warden or designee for approval.

---

[2] The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[3] *See Mosier*, 937 F.2d at 1523.

> The request shall include a statement as to his/her religious beliefs which necessitate a Kosher diet.
>
> L.  Upon receipt of such a request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner and obtain a response to the following questions:
>
>> 1.  Briefly explain the major teachings of your designated religion.
>>
>> 2.  Why is a kosher diet required by this religion.
>>
>> 3.  What is a kosher diet?  In other words, how does it differ from food otherwise prepared by the institution?  What types of food are not allowed?

(See Defendants' Exhibit 13.)

In an October 16, 2007 memorandum to Warden Bergh, Defendant Burnett explained the reason that Plaintiff's request for a Kosher diet was denied:

> McQuiter #244341 requested accommodation with the Kosher menu. It is noted McQuiter has requested, and has been denied Kosher accommodations in 1999, 2001, 2004 and 2006.  It is further noted that he was self-identified as Jewish from March 2001 until March 2002.  He again "converted" from Catholicism to Judaism in January 2004.  These changes in faith preference suggest he has not been sincere in the pursuit of any faith practices.  McQuiter was interviewed by Chaplain Gerald Riley.  Riley reports McQuiter was able to communicate almost no information in response to a question about his faith's major teachings and dietary practices.  It appears he has memorized a few sound bytes, but has almost no understanding of Judaism and its dietary requirements.  While sincerity is based on extrinsic data that is often difficult to ascertain, it appears McQuiter's request is not motivated by a sincere desire to pursue the practice of his faith.  If he were sincere, he should have learned much more about his faith in this total of four years' identification as Jewish. Consequently, based on the information available to me, and based on the appearance of a lack of sincerity, McQuiter's request for Kosher accommodations is denied at this time.   He should not be accommodated with Kosher meals.

> It is understood that denial of admission to a special religious menu is not a failure to recognize faith preference. Requests to declare or change religious preferences and requests to attend religious services and purchase and possess religious items must be processed according to Department policy.

(Defendants' Exhibit 7.) Defendants also attach copies of numerous memoranda addressing Plaintiff's request for a Kosher diet, which reflect his lack of effort to learn about Judaism, his failure to request services, and the fact that he only requested a Kosher diet after being placed in administrative segregation. (Defendants' Exhibits 1-8.)

In this case, under a totality of the circumstances approach, Defendants have articulated valid reasons which justify the refusal to provide plaintiff a Kosher diet. Based upon Plaintiff's interviews and the information gathered by Defendants, it was not unreasonable to deny Plaintiff's request. Plaintiff exhibited a lack of knowledge of the requirements of Judaism. The policy used by the prison and the interview process, contrary to Plaintiff's characterization, is not a pass or fail test. The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, Defendants' determination that Plaintiff showed a lack of sincerity should not be disturbed by this Court. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. However, a lack of the basic knowledge regarding why specific food must be consumed for a religion is a strong indication of a lack of sincerity. Under the circumstances

of this case, it is the opinion of the undersigned that Defendants correctly considered Plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available. In the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's RLUIPA and freedom of religion claims.

Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and

a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Defendants have established that they did not violate Plaintiff's constitutional rights. Accordingly, in the opinion of the undersigned, Defendants are entitled to the qualified immunity defense.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for summary judgment (Docket #46) be granted and that this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 30, 2008